**AFFIRM in Part, REVERSE in Part, and REMAND; Opinion Filed August 7, 2018.**



**In The**

# Court of Appeals
# Fifth District of Texas at Dallas

### No. 05-17-00896-CV

## BARANTAS INCORPORATED, PATRICK J. O'BRIEN, BRIAN P. FOX, AND EGS ADMINISTRATION, L.L.C., Appellants
## V.
## ENTERPRISE FINANCIAL GROUP INCORPORATED, Appellee

**On Appeal from the 191st Judicial District Court**
**Dallas County, Texas**
**Trial Court Cause No. DC-17-01503**

## MEMORANDUM OPINION

Before Justices Lang-Miers, Fillmore, and Stoddart
Opinion by Justice Fillmore

On February 22, 2008, Barantas Incorporated and Enterprise Financial Group Incorporated (EFG) entered into an Administrative Services Agreement (the 2008 Agreement) that contained an agreement to arbitrate. After EFG sued Barantas; Patrick J. O'Brien, the president of Barantas; Brian P. Fox, an employee and "principal" of Barantas; and EGS Administration, L.L.C., which is owned by O'Brien and Fox, appellants moved to stay proceedings in the trial court and compel arbitration based on the arbitration provision in the 2008 Agreement. The trial court granted appellants' motion with respect to EFG's claim Barantas breached the 2008 Agreement and request for declarations of its rights and duties under the 2008 Agreement, but denied appellants' motion with respect to all other claims.

In this accelerated, interlocutory appeal, appellants assert the trial court erred by partially denying the motion to compel arbitration and denying the motion to stay proceedings because all claims asserted by EFG against appellants arise from or are based on the 2008 Agreement. We affirm the trial court's order compelling arbitration of EFG's claim against Barantas for breach of the 2008 Agreement and request for declaratory relief relating to the 2008 Agreement. We reverse the trial court's order denying appellants' motion to compel arbitration of EFG's remaining claims, order that all disputes between the parties proceed to arbitration, and remand this case to the trial court so that it may stay the proceedings pending before it.

## Background

EFG administers vehicle service contract (VSC) programs without participating directly in the sale of the vehicles. The 2008 Agreement authorized Barantas to "procur[e] agreements" with vehicle dealerships and call centers in twenty-four states and the District of Columbia to sell VSCs administered by EFG. If EFG entered into a sales agreement with the dealership or call center identified by Barantas, Barantas would receive a commission for any VSC administered by EFG that was sold by the dealership or call center.

The 2008 Agreement required EFG to provide to Barantas "forms, promotional materials, dealer cost rate schedules and other materials needed, in the sole judgment of [EFG], to properly service accounts" of dealerships and call centers procured by Barantas. Barantas was required to "provide continued maintenance and servicing" of the accounts it procured and to "keep such records and business accounts as [EFG] may reasonably request." The 2008 Agreement was subject to termination if Barantas solicited, or attempted to solicit, any of EFG's existing accounts. Barantas and EFG agreed that:

> [A]ny dispute which might arise between them concerning their rights or duties pursuant to this Agreement shall be submitted to arbitration in the County of Tarrant, in the State of Texas, pursuant to the rules of Commercial Arbitration of the American Arbitration Association.

–2–

On October 1, 2009, EFG and Barantas entered into a "Seller Agreement for Administrative Services" (the 2009 Agreement), pursuant to which Barantas was authorized to directly sell VSCs administered by EFG. EFG and EGS entered into a "Seller Agreement for Administrative Services" on January 5, 2015 (the 2015 Agreement), pursuant to which EGS was authorized to directly sell VSCs administered by EFG.

On February 7, 2017, EFG sued appellants, alleging (1) Barantas breached the 2008 Agreement, (2) O'Brien, Fox, and EGS misappropriated, and conspired to misappropriate, EFG's trade secrets, and (3) O'Brien, Fox, and EGS tortiously interfered with, and conspired to tortiously interfere with, EFG's contracts with various call centers. EFG also sought a declaration that the 2008 Agreement was terminated; it had no further obligation to pay commissions or other sums to Barantas; Barantas, O'Brien, and Fox were not authorized to hold themselves out as being affiliated with EFG or having authority to procure agreements on behalf of EFG; and Barantas, O'Brien, and Fox were not authorized to retain, use, or disclose any information or materials provided by EFG for the performance of services under the 2008 Agreement or in the possession of Moxy Solutions, Inc., a corporation with which EFG had an administrative services agreement.

Appellants filed a motion to stay proceedings and compel arbitration based on the arbitration provision in the 2008 Agreement. Appellants asserted EFG's claims were subject to arbitration under either the Federal Arbitration Act, 9 U.S.C.A. §§ 1–16 (West 2009) (the FAA), or the Texas General Arbitration Act, TEX. CIV. PRAC. & REM. CODE ANN. §§ 171.001–.098 (West 2011) (the TAA). Appellants specifically argued (1) EFG's claims against Barantas pertained to EFG's and Barantas's rights and duties under the 2008 Agreement, and (2) the non-signatories could compel arbitration because EFG alleged they were officers, directors, employees, or affiliates of Barantas and EFG's claims related to, flowed from, were interwoven with, and ultimately resulted from the contractual relationship between EFG and Barantas established by the 2008 Agreement.

–3–

EFG filed an amended petition, in which it alleged that, pursuant to the 2008 Agreement, it gave Barantas "its proprietary and confidential forms, promotional materials, rate schedules, statistical and actuarial analyses, and other necessary information and materials in order to properly service call centers procured" by Barantas. EFG further alleged that pursuant to the 2008, 2009, and 2015 Agreements, it periodically "furnished [appellants] with confidential and proprietary information and data regarding EFG's VSC contract customers and their accounts." EFG asserted it provided this information to appellants "for the sole purpose of enabling [appellants] to render services for the benefit of EFG by, *inter alia*, (i) servicing the call centers who sell EFG VSCs and program offerings, and (ii) marketing and selling EFG VSCs and program offerings" to "EFG's Expiring Customers," which it defined as customers with canceled, expired, or near expiring VSCs or with contracts sold by call centers no longer in business or no longer "producing."

EFG also alleged that, on February 20, 2008, it entered into an agreement with Moxy, which provides "data management solutions and services" for the VSC industry (the Moxy Agreement). EFG asserted O'Brien recommended that EFG enter into the Moxy Agreement, but failed to disclose he owned a "substantial 20–25% equity interest in Moxy." According to EFG, it provided its current rate charts, underwriting guidelines, class guides, "list of eligible states for its program for each [s]eller," and "forms for policy fulfilment" to Moxy.

EFG asserted Barantas, O'Brien, and Fox owned a controlling interest in an entity that was administering a VSC program marketed under the name "Omega Autocare." EFG alleged that, without EFG's consent, appellants used EFG's confidential information to solicit call centers to sell Omega Autocare products and to market Omega Autocare products directly to EFG's Expiring Customers.

EFG's first three causes of action were for breach of contract. EFG alleged Barantas breached the 2008 Agreement by:

- Failing to limit the disclosure and use of EFG's proprietary and confidential forms, promotional materials, dealer cost rate schedule, and other necessary materials to disclosure and uses permitted by the 2008 Agreement;

- Failing to disclose "up front" to EFG that O'Brien had a substantial conflict of interest by owning a financial interest in Moxy as well as in companies that competed with EFG in the VSC industry;

- Failing to properly service and maintain the call center accounts procured by Barantas, resulting, at least in part, in delays or failures by call centers to refund commission chargebacks and other deficits; and

- Soliciting or attempting to solicit EFG's existing accounts, by virtue of the actions of O'Brien and Fox.

EFG alleged Barantas breached the 2009 Agreement and EGS breached the 2015 Agreement by:

- Failing to keep confidential and limit the disclosure and use of EFG's confidential customer information to permitted disclosures and uses;

- Failing to provide "notification of and refund cancels" as and when required;

- Failing to fund customer payments, thus forcing cancellation for non-payment, even though the customer made a payment;

- Failing to use their best efforts in marketing EFG's VSC program and failing to faithfully perform in every way their duties in compliance with EFG's instructions by, among other things, using EFG's confidential customer information regarding Expiring Customers to market and sell a VSC program provided by Omega Autocare;

- Failing to return all of EFG's property upon termination of the parties' contractual relationship, including EFG's confidential information; and

- Failing to disclose "up front" to EFG that O'Brien had a substantial conflict of interest by owning a financial interest in Moxy as well as in companies that competed with EFG in the VSC industry.

EFG alleged EGS also breached the 2015 Agreement by failing to expeditiously notify EFG of customer requests for non-renewals and by failing to abide by the Vehicle Protection Association, Inc. Standards of Conduct.

In counts four through twelve of its petition, EFG asserted the following tort claims:

4. Barantas and EGS breached the duty of good faith and fair dealing imposed by the 2009 and 2015 Agreements by disclosing EFG's confidential

–5–

information and using that information to market and sell Omega Autocare's VSCs to EFG's Expiring Customers; using EFG's confidential information, including statistical and actuarial analyses and rates, without EFG's consent, to compete unfairly with EFG; and failing to disclose conflicts of interests of the owners, officers, and directors of Barantas and EGS;

5. Appellants misappropriated EFG's trade secrets, including EFG's confidential information; statistical and actuarial analyses, including rates; and the proprietary and confidential forms and information submitted by EFG to Moxy as well as EFG customer and other information electronically stored in the Moxy database and used that information to compete against EFG by marketing and selling Omega Autocare's VSC program to EFG's Expiring Customers.

6. Appellants conspired to misappropriate EFG's trade secrets;

7. Appellants tortiously interfered with the repayment agreements entered into by EFG and call centers due to higher than expected levels of cancellations through (a) O'Brien and Fox causing, soliciting, or inducing call centers to (i) reduce their volume of business with EFG, re-direct their business to EGS, and refrain from making repayments to EFG, and (ii) refrain from negotiating or entering into amendments of repayment agreements with EFG and from dealing with EFG regarding the terms of their agreements with EFG; and (b) O'Brien, Fox, and EGS using EFG's confidential information to solicit EFG's Expiring Customers to purchase Omega Autocare's VSCs;

8. Appellants tortiously interfered with EFG's VSCs by using EFG's confidential information to cause, solicit, or induce EFG's Expiring Customers to cancel or elect not to renew their VSCs with EFG and to purchase Omega Autocare VSCs; making false and misleading statements to, and causing confusion among such customers; and disparaging EFG, its business, and its VSC products in the solicitations;

9. Appellants tortiously interfered with prospective contractual relationships by using EFG's confidential information to contact EFG's Expiring Customers and solicit them to purchase Omega Autocare's VSCs; making false and misleading statements to, and causing confusion among such customers; and disparaging EFG, its business, and its VSC products in the solicitations;

10. O'Brien, Fox, and EGS conspired to commit tortious interference with the repayment agreements between EFG and certain call centers;

11. Appellants conspired to tortiously interfere with EFG's existing VSC contracts with Expiring Customers and prospective contractual relationships with EFG customers whose VSCs had already expired or canceled; and

12. Appellants published disparaging words about EFG's business to the competitive marketplace, including to call centers and EFG's Expiring Customers.

In its thirteenth cause of action, EFG requested declarations that the 2008, 2009, and 2015 Agreements were terminated; it had no obligation to pay commissions to Barantas and EGS; appellants were not authorized to hold themselves out as being affiliated with EFG or to procure seller agreements or VSCs on behalf of EFG; and appellants had no rights in and were not authorized to retain, use, or disclose any information or materials provided by EFG for the performance of services under the 2008, 2009, and 2015 Agreements or in the possession or control of Moxy.

EFG responded to appellant's motion to compel arbitration, arguing the case was "essentially a business tort case," involving claims and causes of action for misappropriation of EFG's trade secrets and the use of that information to tortiously interfere with EFG's VSCs and to gain an unfair competitive advantage over EFG. EFG asserted that "pursuant to one or more agreements," it disclosed its confidential customer information to appellants "for the sole purpose of enabling [them] to use it in furtherance of EFG's business." Appellants, however, used the information to "market their own vehicle service program and program offerings to EFG's contract customers for the enrichment of [appellants] and detriment of EFG." EFG argued there were multiple agreements between it and appellants, the facts alleged in the amended petition were independent of the 2008 Agreement, and the claims were not subject to arbitration. Attached to EFG's response were the petitions in two cases filed by Barantas in Missouri state court that EFG asserted showed Barantas was attempting to circumvent the arbitration provision, the 2008 Agreement, an "EFG Companies Enrollment Form" for EGS, and the 2015 Agreement.

At the hearing on appellant's motion to compel, appellants provided a notebook to the trial court. The exhibits in the notebook, however, were not offered into evidence and are not in the

appellant record. EFG conceded during the hearing that its claims against Barantas for breach of the 2008 Agreement and for declaratory relief pursuant to the 2008 Agreement were subject to arbitration. The trial court granted appellants' motion to compel as to those claims, but denied it as to all other claims brought by EFG.

**Analysis**

Appellants contend the trial court erred by partially denying the motion to compel arbitration and denying the motion to stay proceedings because all of EFG's claims fall within the scope of the arbitration provision in the 2008 Agreement.

*Applicable Law*

The 2008 Agreement does not state whether the FAA or the TAA applies, and appellants sought to compel arbitration under both statutes. The FAA generally governs arbitration provisions in contracts involving interstate commerce. *Henry v. Cash Biz, LP*, No. 16-0854, 2018 WL 1022838, at *2 (Tex. Feb. 23, 2018), *pet. for cert. filed*, No. 17-1716 (May 24, 2018). The FAA applies to any transaction affecting "commerce" and is coextensive with the reach of the Commerce Clause of the United States Constitution.[1] *Allied-Bruce Terminix Companies, Inc., v. Dobson*, 513 U.S. 265, 273–77 (1995) (citing 9 U.S.C. § 2). "As defined in the FAA, however, 'interstate commerce' is not limited to the interstate shipment of goods, but includes all contracts 'relating to' interstate commerce." *In re FirstMerit Bank, N.A.*, 52 S.W.3d 749, 754 (Tex. 2001) (orig. proceeding).

The 2008 Agreement was executed by Barantas, a Missouri corporation, and EFG, a Texas Corporation with its principal place of business in Irving, Texas. Pursuant to the 2008 Agreement, Barantas was authorized to procure agreements with dealerships and call centers in twenty-four states and the District of Columbia. EFG anticipated entering into sales agreements with any

---

[1] U.S. CONST. art. I, § 8, cl. 3.

dealership or call center identified by Barantas. Barantas received a commission for any VSC administered by EFG that was sold by a dealership or call center "procured" by Barantas. In light of these facts, we conclude the 2008 Agreement involves interstate commerce and is subject to the FAA. *See In re L & L Kempwood Assocs., L.P.*, 9 S.W.3d 125, 127 (Tex. 1999) (orig. proceeding) (per curiam) (transaction involved interstate commerce where parties resided in different states and work was to be done by Texas business in Texas for Georgia owners); *In CRS Indus., Inc.*, No. 01-16-00780-CV, 2017 WL 1881166, at *1 (Tex. App.—Houston [1st Dist.] May 9, 2017, no pet.) (mem. op.).

The 2008 Agreement, however, also states it was "made pursuant to, and shall be governed by, the laws of the State of Texas." The supreme court has interpreted similar language as invoking both the FAA and the TAA. *In re D. Wilson Constr. Co.*, 196 S.W.3d 774, 778–79 (Tex. 2006) (orig. proceeding). When both acts apply, the FAA preempts the TAA only if the TAA is inconsistent with the FAA or affects the enforceability of the contract. *Id.* at 779–80. The parties have not asserted anything in the TAA or other state law subverts enforcement of the 2008 Agreement. Accordingly, where appropriate, we cite cases decided under both acts, as they share the same core substantive principles. *See Forest Oil Corp. v. McAllen*, 268 S.W.3d 51, 56 n.10 (Tex. 2008) (noting similarities between FAA and predecessor statute to TAA and, where appropriate, relying interchangeably on cases that discuss both acts); *see also G.T. Leach Builders, LLC v. Sapphire V.P., LP*, 458 S.W.3d 502, 519 n.14 (Tex. 2015).

### Standard of Review

We review an order denying a motion to compel arbitration for abuse of discretion. *Henry*, 2018 WL 1022838, at *3. We defer to the trial court's factual determinations, if they are supported by evidence, but review the trial court's legal determinations de novo. *Id.* We review de novo whether there is a valid arbitration agreement and whether the claims in dispute fall within the scope of the agreement. *Id.*

*Claims Against Barantas*

Arbitration is a matter of contract, and a party cannot be required to submit to arbitration any dispute it has not agreed to so submit. *AT & T Techs., Inc. v. Commc'ns Workers of Am.*, 475 U.S. 643, 648 (1986); *Shillinglaw v. Baylor Univ.*, No. 05-17-00498-CV, 2018 WL 3062451, at *2 (Tex. App.—Dallas June 21, 2018, no pet. h.) (mem. op.). A party seeking to compel arbitration has the burden to show the existence of a valid arbitration agreement and a dispute within the scope of the agreement. *Jody James Farms, JV v. Altman Grp., Inc.*, 547 S.W.3d 624, 633 (Tex. 2018). If the party seeking to compel arbitration meets this burden, the burden shifts and, to avoid arbitration, the party opposing it must prove an affirmative defense to the provision's enforcement. *Henry*, 2018 WL 1022838, at *2. EFG does not dispute the 2008 Agreement contains a valid agreement to arbitrate. Accordingly, the issue is whether the claims asserted by EFG against Barantas fall within the scope of the agreement.[2]

Both Texas and federal policy favor arbitration. *Id.* at *3. Therefore, courts "resolve any doubts about an arbitration agreement's scope in favor of arbitration." *Id.* (quoting *In re FirstMerit Bank, N.A.*, 52 S.W.3d at 753). "The presumption in favor of arbitration 'is so compelling that a court should not deny arbitration "*unless it can be said with positive assurance* that an arbitration clause is *not* susceptible of an interpretation which would cover the dispute at issue."'" *Id.* (quoting *Prudential Sec. Inc. v. Marshall*, 909 S.W.2d 896, 899 (Tex. 1995) (orig. proceeding) (per curiam); *Neal v. Hardee's Food Sys., Inc.*, 918 F.2d 34, 37 (5th Cir. 1990)). However, the strong policy

---

[2] Appellants assert that, by incorporating the Commercial Arbitration Rules (CARs) of the American Arbitration Association into the arbitration provision of the 2008 Agreement, EFG and Barantas agreed the arbitrator, rather than the trial court, would determine arbitrability. Rule R-7(a) of the CARs provides the "arbitrator shall have the power to rule on his or her own jurisdiction, including any objections with respect to the existence, scope or validity of the arbitration agreement[.]" AMERICAN ARBITRATION ASSOCIATION, *Commercial Arbitration Rules and Mediation Practice*, https://www.adr.org/sites/default/files/Commercial%20Rules.pdf (last visited July 28, 2018). This Court has concluded a broad arbitration agreement that incorporates rules empowering an arbitrator to decide issues of arbitrability indicates a clear intent by the parties for the arbitrator to consider any objections to the existence, scope, or validity of the arbitration agreement. *See Saxa Inc. v. DFD Architecture Inc.*, 312 S.W.3d 224, 229–30 (Tex. App.—Dallas 2010, pet. denied); *but see Jody James Farms, JV.*, 547 S.W.3d at 631–32 (concluding incorporation of AAA rules into arbitration agreement does not show clear intent for arbitrator to determine arbitrability as to non-signatory). However, because the CARs were not offered into evidence, the trial court was required to determine the scope of the arbitration agreement. *See PER Grp. L.P. v. Dava Oncology, L.P.*, 294 S.W.3d 378, 386 (Tex. App.—Dallas 2009, no pet.) (concluding that because the record did not contain the CARs and did not indicate the rules were offered into evidence in trial court, the trial court was required to determine scope of arbitration agreement).

favoring arbitration "cannot serve to stretch a contractual clause beyond the scope intended by the parties or allow modification of the plain and unambiguous provisions of an agreement." *Belmont Constructors, Inc. v. Lyondell Petrochemical Co.*, 896 S.W.2d 352, 356 (Tex. 1995); *see also Staley v. Crossley*, No. 05-17-00319-CV, 2018 WL 2252554, at *3 (Tex. App.—Dallas May 17, 2018, no pet.) (mem. op.).

The scope of an arbitration clause is determined based on the "complaint's factual allegations rather than the legal causes of action asserted." *In re FirstMerit Bank, N.A.*, 52 S.W.3d at 754; *see also Henry*, 2018 WL 1022838, at *3. "When the contract contains a broadly written arbitration clause, so long as the allegations touch matters, have a significant relationship with, or are inextricably enmeshed or factually intertwined with the contract, the claim will be arbitrable. *Athas Health, LLC v. Trevithick*, No. 05-16-00219-CV, 2017 WL 655926, at *4 (Tex. App.—Dallas Feb. 17, 2017, no pet.) (mem. op.); *see also Prudential Sec. Inc.*, 909 S.W.2d at 900; *Jack B. Anglin Co., Inc. v. Tipps*, 842 S.W.2d 266, 271 (Tex. 1992) (concluding that, although misrepresentation claims were grounded in legal theory distinct from contract claim, they were factually intertwined with breach of contract claim and thus subject to arbitration provision of contract). However, "[i]f the facts alleged in support the claim stand alone, are completely independent of the contract [containing the arbitration provision], and the claim can be maintained without reference to the contract, the claim is not subject to arbitration." *VSR Fin. Servs., Inc. v. McLendon*, 409 S.W.3d 817, 832 (Tex. App.—Dallas 2013, no pet.) (quoting *Pennzoil Co. v. Arnold Oil Co., Inc.*, 30 S.W.3d 494, 498 (Tex. App.—San Antonio 2000, orig. proceeding)).

"[T]he scope of an arbitration clause that includes all 'disputes,' and not just claims, is very broad and encompasses more than claims 'based solely on rights originating exclusively from the contract.'" *Henry*, 2018 WL 1022838, at *3 (quoting *Pinto Tech. Ventures, L.P. v. Sheldon*, 526 S.W.3d 428, 439 (Tex. 2017)). Further, the term "concerning," when used in an arbitration provision, is "a broad term synonymous with 'relating to.'" *Tantrum St., LLC v. Carson*, No. 05-

16-01096-CV, 2017 WL 3275901, at *4 (Tex. App.—Dallas July 25, 2017, no pet.) (mem. op.); *Schwarz v. Pully*, No. 05-14-00615-CV, 2015 WL 4607423, at *3 (Tex. App.—Dallas Aug. 3, 2015, no pet.) (mem. op.) ("The phrase 'relates to' is a very broad term. A claim 'relates to' a contract if it has a significant relationship with or touches matters covered by the contract." (internal citations omitted)). "[A]rbitration provisions that employ terms like 'any dispute' and 'relating to' are broad arbitration clauses capable of expansive reach and create a presumption of arbitrability." *In re Signor*, No. 05-16-00703-CV, 2017 WL 1046770, at *6 (Tex. App.—Dallas Mar. 20, 2017, orig. proceeding) (mem. op.). When parties include such a broad clause in an agreement to arbitrate and do not expressly exclude claims from arbitration, "only the most forceful evidence of a purpose to exclude the claim[s] from arbitration can prevail." *Id.* (quoting *BDO Seidman, LLP v. J.A. Green Dev. Corp.*, 327 S.W.3d 852, 857 (Tex. App.—Dallas 2010, no pet.)); *see also AT & T Techs., Inc.*, 475 U.S. at 650. The scope of such a broad clause "is not limited to claims that literally arise under the contract's terms." *In re CRS Indus., Inc.*, No. 01-16-00780-CV, 2017 WL 1881166, at *2 (Tex. App.—Houston [1st Dist.] May 9, 2017, orig. proceeding) (citing *Hou-Scape, Inc. v. Lloyd*, 945 S.W.2d 202, 205–06 (Tex. App.—Houston [1st Dist.] 1997, orig. proceeding) (per curiam) (claims for deceptive trade practices, fraudulent inducement, negligence, defamation, and tortious interference with business relations all held to be within scope of broad arbitration clause)).

EFG and Barantas agreed that "any dispute which might arise between them concerning their rights or duties" pursuant to the 2008 Agreement would be submitted to arbitration, a broad provision that encompasses any claims relating to the 2008 Agreement and creates a presumption of arbitrability. *In re Signor*, 2017 WL 1046770, at *6. In its first amended petition, EFG alleged it provided its confidential information (1) to appellants pursuant to the 2008 Agreement and the 2009 and 2015 Agreements, which were sales agreements contemplated by the 2008 Agreement, and (2) to Moxy pursuant to the Moxy Agreement, which was entered into at the same time as the

2008 Agreement. EFG asserts O'Brien owned an equity interest in Moxy, but failed to disclose that interest to EFG. EFG alleged Barantas used the confidential information it obtained pursuant to the 2008, 2009, and 2015 Agreements and from Moxy to solicit (1) dealerships and call centers to cease doing business with EFG and to sell VSCs administered by Omega Autocare, and (2) EFG's Expiring Customers to purchase VSCs administered by Omega Autocare rather than renewing their VSCs administered by EFG. Based on this conduct, EFG asserted Barantas committed a number of torts and breached the 2008 and 2009 Agreements.

EFG's claims that Barantas breached the 2008 Agreement and for declaratory relief based on that breach are premised on the same conduct that EFG alleges supports its claims Barantas breached the 2009 Agreement and committed a number of torts. Accordingly, all of EFG's claims against Barantas are factually intertwined, inextricably enmeshed, significantly related, or otherwise touch upon the 2008 Agreement, *see Athas Health, LLC*, 2017 WL 655926, at \*4; *see also Prudential Sec. Inc.*, 909 S.W.2d at 900; *Tipps*, 842 S.W.2d at 271, and fall within the scope of the broad arbitration provision in the 2008 Agreement. Given that EFG has not proven a defense to the enforcement of the agreement, the trial court had no discretion but to compel arbitration of all of EFG's claims against Barantas.

*Claims Against Non-Signatories*

Generally, "an arbitration clause cannot be invoked by a non-party to the arbitration contract." *G.T. Leach Builders, LLC*, 458 S.W.3d at 524; *see also Jody James Farms, JV*, 547 S.W.3d at 632 ("The involvement of a non-signatory is an important distinction because a party cannot be forced to arbitrate absent a binding agreement to do so."). However, if required by principles of contract law and agency, "a person who has agreed to arbitrate disputes with one party may be required to arbitrate related disputes with non-parties." *Jody James Farms, JV*, 547 S.W.3d at 629. A non-signatory may enforce an arbitration provision's terms only if there is a valid agreement to arbitrate. *Id.* at 633. Whether a claim involving a non-signatory must be

–13–

arbitrated is a "gateway matter" for the trial court which is subject to de novo review on appeal. *Id.* at 629.

Texas courts have recognized six theories that allow non-signatories to enforce arbitration agreements: (1) incorporation by reference; (2) assumption; (3) agency; (4) alter ego; (5) equitable estoppel; and (6) third-party beneficiary. *See id.* at 633. Appellants argue the trial court erred by not compelling EFG's claims against O'Brien, Fox, and EGS to arbitration because (1) O'Brien, Fox, and EGS are agents or affiliates of Barantas, a signatory to the 2008 Agreement, (2) the claims against O'Brien and Fox were based on actions they took in a representative capacity for Barantas or EGS, and (3) the claims against O'Brien, Fox, and EGS are based on the same conduct as the claims against Barantas.

Parties to an arbitration agreement "may not evade arbitration through artful pleading, such as by naming individual agents of the party to the arbitration clause and suing them in their individual capacities." *In re Merrill Lynch Trust Co. FSB*, 235 S.W.3d 185, 188 (Tex. 2007) (orig. proceeding). Corporations and other business entities "can act only through human agents," and as a result, "many business-related torts can be brought against either a corporation or its employees." *Id.* However, "a contracting party generally cannot avoid unfavorable clauses by suing the other parties' agents." *Jody James Farms, JV*, 547 S.W.3d at 635 (quoting *In re Kaplan Higher Educ. Corp.*, 235 S.W.3d 206, 209 (Tex. 2007) (per curiam) (orig. proceeding)). Accordingly, an agent of a signatory to the contract may sometimes invoke an arbitration clause against another signatory. *Id.*; *see also In re Kaplan Higher Educ. Corp.*, 235 S.W.3d at 209 (concluding agent of signatory may sometimes invoke arbitration clause even if a non-signatory and claimant is not suing on contract). The non-signatory seeking to enforce the arbitration provision must show it was subject to the principal signatory's control and authorized to act as its agent. *Jody James Farms, JV*, 547 S.W.3d at 635.

Under the principles of direct-benefit estoppel, a non-signatory to a contract may compel arbitration when the signatory to the contract containing an arbitration clause seeks "'to derive a direct benefit' from a contract with an arbitration provision. *Id.* at 637 (quoting *G.T. Leach Builders, LLC*, 458 S.W.3d at 527). The application of this theory prevents a signatory from attempting to "both have his contract and defeat it too," by seeking to hold the non-signatory liable pursuant to the terms of a contract that contains an arbitration provision while simultaneously denying the dispute is subject to arbitration because the defendant is a non-signatory to the agreement. *Id.*; *see also Meyer v. WMCO-GP, LLC*, 211 S.W.3d 302, 306 (Tex. 2006).

"When a claim depends on the contract's existence and cannot stand independently—that is, the alleged liability 'arises solely from the contract or must be determined by reference to it'—equity prevents a person from avoiding the arbitration clause that was part of that agreement." *Jody James Farms*, *JV*, 547 S.W.3d at 637 (quoting *In re Weekley Homes, L.P.*, 180 S.W.3d 127, 132 (Tex. 2005) (orig. proceeding)); *see also G.T. Leach Builders, LLC*, 458 S.W.3d at 527–28. On the other hand, "when the substance of the claim arises from general obligations imposed by state law, including statutes, torts and other common law duties, or federal law,' direct-benefits estoppel is not implicated even if the claim refers to or relates to the contract or would not have arisen 'but for' the contract's existence." *Jody James Farms, JV*, 547 S.W.3d at 637 (quoting *G.T. Leach Builders, LLC*, 458 S.W.3d at 528).

EFG's claims in its original petition were based on the 2008 Agreement, which contained an arbitration clause. *See id.* ("In the archetypal direct-benefits case, the party opposing arbitration seeks to enforce the terms of an agreement with an arbitration clause."). EFG alleged that O'Brien and Fox were subject to the trial court's jurisdiction because, acting in their capacities as officers, directors, or employees of Barantas, they contracted with EFG. EFG further asserted the lawsuit involved the "wrongful conduct" of O'Brien "in causing the violation by Defendant Barantas of its agreement with EFG and the breaches of contract and duties resulting therefrom." EFG asserted

–15–

that, "acting by and through" O'Brien, Barantas solicited call centers under the 2008 Agreement and "acting by and through" O'Brien and Fox, Barantas solicited and procured repayment agreements from call centers. In its first amended petition, EFG alleged O'Brien and Fox improperly obtained EFG's confidential information from Moxy and, along with Barantas and EGS, used that information, as well as confidential information obtained from EFG pursuant to the 2008, 2009, and 2015 Agreements, to interfere with EFG's relationships with dealerships and call centers and to solicit EFG's Expiring Customers to purchase Omega Autocare's VSCs.

EFG alleged Barantas and EGS were "affiliated entities" that were "believed to be controlled and ultimately owned by" O'Brien and Fox. EFG asserted EGS breached the 2015 Agreement in a number of ways, including using confidential information EFG provided pursuant to the 2008 Agreement and failing to disclose O'Brien and Fox, the owners, officer, or directors of EGS, had a "substantial conflict of interest" due to O'Brien owning an equity interest in Moxy. EFG also alleged EGS, along with the other defendants, improperly used EFG's confidential information, some of which was obtained pursuant to the 2008 Agreement, to solicit (1) dealerships and call centers to cease doing business with EFG and start selling Omega Autocare's VSCs and (2) EFG's Expiring Customers to purchase Omega Autocare's VSCs, rather than VSCs administered by EFG.

"[W]hen an agreement between two parties clearly provides for the substance of a dispute to be arbitrated, one cannot avoid it by simply pleading that a nonsignatory agent or affiliate was pulling the strings." *In re Kaplan Higher Educ. Corp.*, 235 S.W.3d at 210. We have already determined all of EFG's claims against Barantas fall within the scope of the broad arbitration provision in the 2008 Agreement. EFG asserts those same claims, based on the same facts, against O'Brien, Fox, and EGS, as agents or affiliates of EFG. By bringing a lawsuit that is necessarily premised on Barantas's and EFG's rights and duties under the 2008 Agreement, confidential information provided to appellants pursuant to that agreement, and appellants' alleged improper

–16–

use of that information, EFG is estopped from avoiding the arbitration provision in that agreement. *See Rachal v. Reitz*, 403 S.W.3d 840, 846–47 (Tex. 2013); *In re Trammell*, 246 S.W.3d 815, 821 (Tex. App.—Dallas 2008, no pet.) ("When each of a signatory's claims against a nonsignatory references or presumes the existence of a written agreement, the signatory's claims arise out of and relate directly to the written agreement, and arbitration is appropriate.").

We conclude EFG's claims against O'Brien, Fox, and EGS are so intertwined with and dependent upon the 2008 Agreement that it would be impractical to resolve EFG's claims against Barantas without simultaneously resolving the claims against the non-signatories. *See Waterstone on Lake Conroe, Inc. v. Williams*, No. 09-17-00071-CV, 2017 WL 3298234, at *6 (Tex. App.— Beaumont Aug. 3, 2017, no pet.) (mem. op.); *see generally Grigson v. Creative Artists Agency L.L.C.*, 210 F.3d 524, 527–28 (5th Cir. 2000). "[A]lowing willing non-signatories to compel arbitration with a party to the arbitration agreement simply precludes a signatory from avoiding arbitration with a party when the issues the non-signatory is seeking to resolve in arbitration are intertwined with the agreement the estopped party has signed." *Shillinglaw*, 2018 WL 3062451, at *3 (citing *In re Vesta Ins. Grp., Inc.*, 192 S.W.3d 759, 762–63 (Tex. 2006) (per curiam) (orig. proceeding)). Under those circumstances, "all parties to the requested arbitration have agreed to forego their right to a judicial forum." *Id.*

Based on the record, we conclude that O'Brien, Fox, and EGS, even though non-signatories to the 2008 Agreement, may compel arbitration based on the arbitration provision and that EFG's claims against the non-signatories fall within the scope of the provision. Because EFG has not proven a defense to the enforcement of the agreement, the trial court abused its discretion by denying O'Brien, Fox, and EGS's motion to compel arbitration.

*Motion to Stay*

Appellants requested the trial court stay its proceedings pending the arbitration of EFG's claims. Where the disputed matter falls within the scope of the matter the parties agreed to arbitrate

–17–

and the party opposing arbitration has failed to prove a defense, a "'trial court has no discretion but to compel arbitration and stay its own proceedings.'" *In re FirstMerit Bank, N.A.*, 52 S.W.3d at 753–54. Because all of EFG's claims are subject to arbitration, the trial court erred by denying appellants' motion to stay proceedings.

## Conclusion

We resolve appellants' sole issue in their favor, affirm the trial court's order compelling arbitration of EFG's claim against Barantas for breach of the 2008 Agreement and request for declaratory relief relating to the 2008 Agreement, reverse the trial court's order denying appellants' motion to compel arbitration of EFG's remaining claims, order that all disputes between the parties proceed to arbitration, and remand this case to the trial court so that it may stay the proceedings pending before it.



/Robert M. Fillmore/
ROBERT M. FILLMORE
JUSTICE


170896F.P05



# Court of Appeals
# Fifth District of Texas at Dallas

## JUDGMENT

BARANTAS INCORPORATED,
PATRICK J. O'BRIEN, BRIAN P. FOX,
AND EGS ADMINISTRATION, LLC,
Appellants

No. 05-17-00896-CV     V.

ENTERPRISE FINANCIAL GROUP
INCORPORATED, Appellee

On Appeal from the 191st Judicial District
Court, Dallas County, Texas,
Trial Court Cause No. DC-17-01503.
Opinion delivered by Justice Fillmore,
Justices Lang-Miers and Stoddart
participating.

In accordance with this Court's opinion of this date, the trial court's July 27, 2017 Order Granting in Part and Denying in Part Defendants' Motion to Stay Proceedings and Compel Arbitration is **AFFIRMED** in part and **REVERSED** in part.

We **AFFIRM** that portion of the trial court's order granting the motion to compel as to Enterprise Financial Group Incorporated's claims against Barantas Incorporated "for breach of the written agreement referred to as the '2008 Private Label Agreement'" and for declaratory relief regarding the 2008 Private Label Agreement.

We **REVERSE** that portion of the trial court's July 27, 2017 order (1) denying Barantas Incorporated, Patrick J. O'Brien, Brian P. Fox, and EGS Administration, LLC's motion to compel arbitration of all other claims asserted by Enterprise Financial Group Incorporated and (2) denying Barantas Incorporated, Patrick J. O'Brien, Brian P. Fox, and EGS Administration, LLC's motion to stay the trial court proceedings.

It is **ORDERED** that all disputes between the parties proceed to arbitration. We **REMAND** this case to the trial court and instruct it to stay the proceedings pending before it.

It is **ORDERED** that appellants Barantas Incorporated, Patrick J.O'Brien, Brian P. Fox, and EGS Administration, L.LC recover their costs of this appeal from appellee Enterprise Financial Group Incorporated.

Judgment entered this 7th day of August, 2018.