**BDO SEIDMAN, LLP, James Fielding, Morris Gottlieb, and Lawrence Cohen, Appellants,**

v.

**J.A. GREEN DEVELOPMENT CORP., Jagi, Inc., and Jagi Verde, LLC, Appellees.**

No. 05–09–01520–CV.

Court of Appeals of Texas, Dallas.

Nov. 9, 2010.

Robert W. Kantner, DLA Piper US LLP, Dallas, Cary B. Samowitz, DLA Piper LLP (US), New York, NY, Melanie B. Rother, Fulbright & Jaworski LLP, Houston, for Appellants.

David R. Deary, Carol E. Farquhar, J. Dylan Snapp, Loewinsohn, Flegle and Deary, L.L.P., Dallas, for Appellees.

Before Justices MOSELEY, O'NEILL, and LANG–MIERS.

## OPINION

Opinion By Justice O'NEILL.

Appellants BDO Seidman, LLP, James Fielding, Morris Gottlieb, and Lawrence Cohen (collectively referred to as "BDO") appeal the trial court's order denying their motion to compel arbitration against appellees J.A. Green Development Corporation, Jagi, Inc., and Jagi Verde, LLC (collectively referred to as "Green"). BDO raises three issues on appeal: (1) whether the Federal Arbitration Act ("FAA") or New York law determines whether Green's claims against BDO are arbitrable; (2) whether Green's claims are within the scope of the consulting agreement's arbitration clause; and (3) whether the arbitration clause is unconscionable.

We reverse the trial court's order denying arbitration and remand with instructions to order the parties to arbitration and stay the underlying case pending outcome of the arbitration.

### Background

Green is a New York corporation involved in real estate development. In 1998, Green negotiated the sale of property near JKF International Airport and gained approximately $35 million from the sale. Green later met with BDO to dis-

cuss options for reducing tax liability, which included using a distressed debt strategy. In March 2001, Green entered into a tax consulting agreement with BDO, which included the following broad arbitration provision:

> (d) If any dispute, controversy or claim arises in connection with the performance or breach of this agreement and cannot be resolved by facilitated negotiations (or the parties agree to waive that process) then such dispute, controversy or claim shall be settled by arbitration in accordance with the laws of the State of New York, and the then current Arbitration Rules for Professional Accounting and Related Disputes of the American Arbitration Association ("AAA").…

The Internal Revenue Service later determined the distressed debt strategy implemented by BDO was nothing more than an illegal tax shelter. After an audit, the IRS assessed Green $5,147,555.00 in penalties and interest. Green filed suit against BDO asserting, among several causes of action, that BDO knew the distressed debt strategy was an illegal tax shelter and fraudulently induced them to enter into the consulting agreement.

BDO filed a motion to compel arbitration and to stay or dismiss Green's lawsuit pending outcome of the arbitration based on the arbitration clause in the consulting agreement. After a hearing, the trial court denied the motion. This accelerated appeal followed.

## Standard of Review

■ Whether an arbitration clause imposes a duty to arbitrate is a matter of contract interpretation and a question of law for the court to review de novo.[1] *See Tex. Petrochemicals, L.P. v. ISP Water*

*Mgmt. Servs., L.L.C.*, 301 S.W.3d 879, 884 (Tex.App.-Beaumont 2009, no pet.); *see also McReynolds v. Elston*, 222 S.W.3d 731, 740 (Tex.App.-Houston [14th Dist.] 2007, no pet.). In a de novo review, the trial court's decision is given absolutely no deference. *Quick v. City of Austin*, 7 S.W.3d 109, 116 (Tex.1998). Although BDO requested findings of fact and conclusions of law, the trial court failed to file any. Therefore, we may affirm the trial court's decision on any legal theory supported by the evidence. *In re Guardianship of Fortenberry*, 261 S.W.3d 904, 910 (Tex.App.-Dallas 2008, no pet.).

## Does New York Law or the FAA Apply?

As a threshold matter, we must determine whether New York substantive law governs the arbitration agreement or if the FAA applies. BDO argues the FAA applies because although the arbitration provision states New York law applies, it does not contain the specific "enforcement" language required to trigger enforcement under New York law. Thus, by default, the FAA applies. Green contends BDO misconstrues New York law because the arbitration clause is not required to have any sort of special "enforcement" language. Rather, there are two situations in which New York law governs an arbitration: (1) if the entire agreement (as opposed to the arbitration provision within the agreement) contains a choice-of-law provision providing that the entire agreement and its "enforcement" are governed by New York law or (2) if the arbitration provision itself (as opposed to the entire agreement) explicitly provides that arbitration is gov-

---

1. Although the outcome of this case is based on our interpretation of New York and federal law, neither party disputes the standard of review as de novo. Further, both parties cite Texas case law for support.

erned by New York law.[2] As explained below, we agree with BDO.

BDO argues *Diamond Waterproofing Systems, Inc. v. 55 Liberty Owners Corporation,* 4 N.Y.3d 247, 793 N.Y.S.2d 831, 826 N.E.2d 802 (2005) is controlling. In that case, parties entered into a contract agreeing to submit "[a]ny controversy or Claim arising out of or related to the Contract" for arbitration. The contract further provided "[it] shall be governed by the law of the place where the Project is located." *Id.* at 804. After a dispute arose, 55 Liberty Owners demanded arbitration, and Diamond Waterproofing sought to permanently stay arbitration. *Id.* On appeal, the issue for New York's highest court was whether the FAA applied to the arbitration clause. It noted that where parties broadly agree to arbitrate "any controversy" arising from their contracts, they may—as with any contract—add qualifications to *that* clause by providing New York law will govern the agreement and its enforcement. *Id.* at 806 (emphasis added). It went on to hold

> A choice of law provision, which states that New York law shall govern both "the agreement *and its enforcement,*" adopts as "binding New York's rule that threshold Statute of Limitations questions are for the courts." In the absence of more critical language concerning enforcement, however, all controversies, including issues of timeliness, are subject to arbitration.

*Id.* (emphasis in original). Because the parties' arbitration clause did not express an intent to have New York law govern their agreement's enforcement, the FAA controlled. *Id.*

In *All Metro Health Care Services, Inc. v. Edwards,* the lower court relied on *Diamond Waterproofing, Inc.* when determining an arbitration clause did not contain the proper enforcement language and therefore, New York law did not apply. *See All Metro Health Care Servs., Inc. v. Edwards,* 25 Misc.3d 863, 884 N.Y.S.2d 648, 652 (2009). In that case, a stock purchase agreement contained a choice of law provision stating the "arbitration shall be held in accordance with the laws of the State of New York." *Id.* at 653. The court noted that while the stock provision stated New York law applied, the provision did not state "New York law shall govern both the agreement *and its enforcement,* and is therefore not sufficient to express an intention to have the court, rather than an arbitrator, determine a procedural issue." *Id.* (emphasis in original). To conclude otherwise would undermine the substantial authority under the FAA for the arbitrator to determine such issues. *Id.*

█ As previously stated, the arbitration clause at issue here states "[i]f any dispute, controversy or claim arises in connection with the performance or breach of this agreement ... then such dispute, controversy or claim shall be settled by arbitration in accordance with the laws of the State of New York...." It is clear the arbitration clause does not contain the "enforcement" language necessary under New York law. Therefore, based on the clear holdings of *Diamond Waterproofing* and *All Metro Health Care Services,* we conclude the FAA determines whether Green's objection to arbitration is decided by the court or an arbitrator. *See* 9 U.S.C. § 2 (2009) (stating FAA applies to any written agreement to arbitrate "a con-

---

**2.** Green concedes that if neither of these situations are present, then the FAA applies because it is undisputed the contract involves interstate commerce. *See In re FirstMerit*

*Bank, N.A.,* 52 S.W.3d 749, 754 (Tex.2001) (holding contract relating to interstate commerce is subject to FAA).

tract evidencing a transaction involving commerce").

In reaching this conclusion, we are not persuaded by Green's arguments that the enforcement language is only necessary in a choice of law provision governing the entire agreement. We likewise discount his arguments that so long as the arbitration clause states New York law applies, without the enforcement language, then it controls over the FAA. Green cites several cases in support of their propositions; however, we find them distinguishable.

Green contends *Hackett v. Milbank, Tweed, Hadley & McCloy* stands for the proposition that when an arbitration provision states New York law governs arbitration, then the FAA does not apply and enforcement language is not needed. He relies on the court's holding, which states the following:

> The overriding policy of the Act, however, is the enforcement of arbitration agreements according to their terms, including the parties' choice of governing law.... The parties' agreement here not only provided for binding arbitration of their dispute, it explicitly provided that New York law would govern that arbitration, and that the only grounds for vacating the arbitrator's award are those encompassed by CPLR 7509 and CPLR 7511. Such an explicit and unambiguous choice of law in an arbitration agreement must be given effect.

86 N.Y.2d 146, 630 N.Y.S.2d 274, 654 N.E.2d 95, 100 (1995).

We recognize the arbitration provision in *Hackett* did not contain the enforcement language, yet the court still determined New York law applied rather than the FAA. However, the arbitration provision,

in addition to providing it was governed by New York law, also incorporated two specific sections of New York's procedural code regarding vacating an arbitration award. *Id.* The reference to these two sections of New York's procedural code further established the parties' "explicit and unambiguous choice of law." The arbitration provision at issue in this case does not state that any claim of fraud in the inducement will be analyzed under any specific New York standard. Moreover, *Hackett* was before the court *after* the case had been arbitrated, and petitioner was attempting to vacate the award. Here, Green and BDO dispute whether arbitration is appropriate in the first place. We further conclude *Hackett* is unpersuasive because it was decided prior to the court's clear pronouncement in *Diamond Waterproofing, Inc.* that the enforcement language is necessary for New York law to apply to an arbitration provision. *Diamond Waterproofing Sys., Inc.,* 793 N.Y.S.2d 831, 826 N.E.2d at 806.

Green also argues *Volt Information Sciences, Inc. v. Board of Trustees of Leland Stanford Junior University,* 489 U.S. 468, 109 S.Ct. 1248, 103 L.Ed.2d 488 (1989) supports their arguments; however, the issue before the Court was whether the FAA preempted California law which permitted a court to stay arbitration pending resolution of related litigation involving third parties not bound by the agreement where the parties agreed in contract to abide by the state rules of arbitration. *Id.* at 470, 109 S.Ct. 1248.[3] The Court concluded application of state rules governing the conduct of arbitration did not offend any policy in the FAA; therefore, California law applied to the arbitration clause.

---

**3.** The contract at issue contained an agreement to arbitrate all disputes between the parties "arising out of or relating to this contract or the breach thereof," and the contract "shall be governed by the law of the place where the Project is located." 489 U.S. at 471 n. 1, 109 S.Ct. 1248.

Despite the Court's determination California law, rather than the FAA, applied to an arbitration clause similar to the one at issue here, we conclude Green's reliance on this authority is misplaced. California law is irrelevant to deciding issues related to New York law, particularly where New York requires specific language in an arbitration clause for enforcement.

Green also relies on an unpublished decision from New York's lowest court, which relied on the intermediate appellate court decision in *Diamond Waterproofing,* not the opinion subsequently issued by New York's highest court. *See 212 Investment Corp. v. Kaplan,* 6 Misc.3d 1031(A), 800 N.Y.S.2d 358 (N.Y.Sup.Ct.2005). Accordingly, *212 Investment Corporation* lacks any precedential value.

Finally, we are unpersuaded by *Smith Barney, Harris Upham & Co., Inc. v. Luckie,* 85 N.Y.2d 193, 623 N.Y.S.2d 800, 647 N.E.2d 1308 (1995) and *Salvano v. Merrill Lynch, Pierce, Fenner & Smith, Inc.,* 85 N.Y.2d 173, 623 N.Y.S.2d 790, 647 N.E.2d 1298 (1995) because there decisions were prior to *Diamond Waterproofing, Inc.*

Thus, we conclude based on the clear holdings of *Diamond Waterproofing, Inc.* and *All Metro Health Care Services,* the FAA applies to this case. We sustain BDO's first issue. Having reached this conclusion, we need not address the parties' arguments regarding preemption.

### Do Green's Claims Fall Within the Scope of the Arbitration Provision?

■ We must now determine whether Green's claims fall within the scope of the parties' arbitration agreement. In their second issue, BDO contends the broad language of the provision covers all of Green's claims, as all of their claims involve the tax advice BDO provided under the consulting agreement. Green responds the claims do not fall within the scope of the arbitration provision because BDO intentionally omitted the distressed debt strategy from the scope of services to be rendered under the consulting agreement, and the consulting agreement specifically states it does not apply to investment advice and services.

■ It has been established where a contract contains an arbitration clause, there is a presumption of arbitrability in the sense that "[a]n order to arbitrate the particular grievance should not be denied unless it may be said with positive assurance that the arbitration clause is not susceptible of an interpretation that covers the asserted dispute. Doubts should be resolved in favor of coverage." *AT & T Tech., Inc. v. Commc'n Workers of Am.,* 475 U.S. 643, 650, 106 S.Ct. 1415, 89 L.Ed.2d 648 (1986). Such a presumption is particularly applicable where the clause is broad. *Id.* In such cases, "[i]n the absence of any express provision excluding a particular grievance from arbitration, we think only the most forceful evidence of a purpose to exclude the claim from arbitration can prevail." *Id.* (citing *United Steelworkers of Am. v. Warrior & Gulf Navigation Co.,* 363 U.S. 574, 584–85, 80 S.Ct. 1347, 4 L.Ed.2d 1409 (1960)).

The arbitration provision at issue broadly states that "if any dispute, controversy, or claim arises in connection with the performance or breach of this agreement ... such dispute, controversy, or claim shall be settled by arbitration...." The consulting agreement provides under "*Services*" that BDO agrees to "assist[...] the Client and/or his advisors in structuring the transaction(s) to attain the most beneficial tax results...." It further states "BDO agrees to provide assistance to the Client and/or their representatives with certain income tax planning as well assisting with

certain income tax and other financial aspects of various anticipated investment activities."

Although the agreement specifically states BDO is not in the business of providing investment advice or services, we agree with BDO that Green's claims directly relate to the distressed debt strategy, which involved tax planning advice. And *"Services"* under the consulting agreement specifically include assistance with income tax planning and structuring transactions to attain beneficial tax results.

Throughout their first amended petition, Green made claims directly related to the consulting agreement including rescission, declaration that agreements are unenforceable, and breach of contract. Further, the remaining causes of action directly relate to the distressed debt strategy, which involved tax advice for which Green agreed to pay a $3,300,000 fee (the "consulting fee"). Green repeatedly alleged in his response to BDO's motion to compel arbitration that the consulting agreement was an "integral part of the overall conspiracy to commit criminal fraud."

Thus, despite Green's arguments to the contrary, there is no question each and every claim in their first amended petition centrally concerns the tax advice BDO provided and Green's claims that BDO breached the consulting agreement by providing improper tax advice. Because the claims "arise in connection with the performance or breach of this agreement," they are within the scope of the broad arbitration provision contained in the consulting agreement. *See Jamaica Hosp. Med. Ctr., Inc. v. Oxford Health Plans (N.Y.), Inc.*, 58 A.D.3d 686, 871 N.Y.S.2d 665, 666 (N.Y.App.Div.2009) (holding plaintiffs' claims, as alleged in amended complaint, all arise from or relate to their contracts with defendants and are within scope of broad arbitration provision). Thus, arbitration must be compelled, and

the trial court erred in denying BDO's motion. *See Genesco, Inc. v. T. Kakiuchi & Co.*, 815 F.2d 840, 846 (2d Cir.1987) (holding if allegations underlying the claim "touch matters" covered by parties' agreement, then claims must be arbitrated). We sustain BDO's second issue.

## Is the Arbitration Provision Unconscionable?

■ Having determined Green's claims fall within the arbitration provision, we must finally determine if the provision itself is unconscionable and prevents arbitration. In their third issue, BDO argues Green has not carried their burden to prove the provision is unconscionable. Green responds the arbitration provision violates public policy because it was part of a conspiracy to commit criminal fraud.

■ An unconscionable contract provision is defined as one that "is grossly unreasonable or unconscionable in light of the mores and business practices of the time and place as to be unenforcible according to its literal terms." *Gillman v. Chase Manhattan Bank, N.A.*, 73 N.Y.2d 1, 537 N.Y.S.2d 787, 534 N.E.2d 824, 828 (1988). A determination of unconscionability generally requires a showing that the contract was procedurally and substantively unconscionable when made. *Id.* (noting it requires "some showing of an absence of meaningful choice on the part of one of the parties together with contract terms which are unreasonably favorable to the other party"); *see also Accurate Copy Serv. of Am., Inc. v. Fisk Bldg. Assoc. L.L.C.*, 72 A.D.3d 456, 899 N.Y.S.2d 157, 157 (N.Y.App.Div.2010) (noting claim for an unconscionable contract requires facts supporting *both* procedural and substantive unconscionability); *Moss v. Rent–A–Center*, No. 06–CV–3312, 2007 WL 2362207, at *5 (E.D.N.Y.2007).

■ The procedural element of unconscionability requires an examination of the

contract formation process and the alleged lack of meaningful choice. *Gillman,* 537 N.Y.S.2d 787, 534 N.E.2d at 828. Green argues the arbitration provision violates public policy because it was part of a conspiracy to commit criminal fraud. Additionally, Green argues they had absolutely no input in the language of the provision, it was contained in the consulting agreement that BDO deliberately designed in a fraudulent manner, and BDO never discussed the provision with them.

We are not persuaded by Green's allegations that BDO made numerous false representations, which induced them to enter into the arbitration provision. As previously stated, Green's claims involve BDO's breach of the consulting agreement by providing improper tax advice. Their claims do not involve any fraud in the making of the arbitration agreement itself. Rather, Green repeatedly states the consulting agreement was an integral part of an overall conspiracy to commit fraud and such fraud was part of a grand scheme that permeated the consulting agreement. Green has not alleged any specific arguments regarding fraud in the formation of the arbitration agreement itself but instead focuses on the overall alleged bad acts by BDO in the formation of the consulting agreement. The law is well-settled that such claims are proper for an arbitrator to decide. *See Prima Paint Corp. v. Flood & Conklin Mfg. Co.,* 388 U.S. 395, 402, 87 S.Ct. 1801, 18 L.Ed.2d 1270 (1967) (holding if the claim is fraud in the inducement of the arbitration clause itself—an issue which goes to the making of the agreement to arbitrate—the federal court may proceed to adjudicate it; otherwise, claims involving the contract generally should be decided by the arbitrator); *see*

*also Campaniello Imports, Ltd. v. Saporiti Italia, S.p.A.,* 117 F.3d 655, 667 (2d Cir. 1997) (case properly sent to arbitration when there was no fraud or misrepresentation directly relating to arbitration clause); *Kowalewski v. Samandarov,* 590 F.Supp.2d 477, 487 (S.D.N.Y.2008) (holding it is well-established a challenge of unconscionability to the whole contract, as opposed to the arbitration provision specifically, is "an arbitrable matter not properly considered by the court").

Thus, because the issue of unconscionability is for the arbitrator to decide, we do not reach BDO's third issue.[4]

### Conclusion

After sustaining BDO's two relevant issues, we conclude the trial court erred in denying their motion to compel arbitration. We reverse the trial court's order denying arbitration and remand to the trial court with instructions to order the parties to arbitration and stay the underlying case pending outcome of the arbitration.

---

4. Green makes a passing argument that the arbitration provision violates the Due Process Clause; however, they have provided no authority supporting their argument. Thus, we conclude the argument is waived. TEX.R.APP. P. 38.1(i).