**REVERSE and RENDER; and Opinion Filed August 9, 2019.**



In The

# Court of Appeals
# Fifth District of Texas at Dallas

## No. 05-18-00266-CV

**STEVE GRAY AND HAPPY ACCIDENTS, INC., Appellants**
**V.**
**BRYAN WARD, Appellee**

**On Appeal from the 366th Judicial District Court**
**Collin County, Texas**
**Trial Court Cause No. 366-05277-2017**

## MEMORANDUM OPINION

Before Justices Whitehill, Molberg, and Reichek
Opinion by Justice Whitehill

This case concerns the scope of a "relating to" arbitration clause in a partnership agreement where the underlying dispute is laser-focused on the parties' partnership duties. Steve Gray and Happy Accidents, Inc. (together, Accidents unless context shows otherwise) appeal the trial court's interlocutory order partially denying their motion to compel arbitration under the Federal Arbitration Act.[1] In a single issue, Accidents argues that the trial court erroneously concluded that some of Bryan Ward's claims fall outside the scope of the parties' arbitration agreement.

The linchpin here is the correlation between the partnership buy-out dispute and Ward's claims that he was wrongfully terminated because of the dispute and defamed concerning the conditions upon which his partnership employment terminated.

---

[1] 9 U.S.C. §1 et. seq. The parties agree that the FAA applies to this dispute.

We conclude the trial court erred because Ward's claims have a significant relationship to and are inextricably enmeshed and factually intertwined with the limited partnership agreement (the LP Agreement) containing the broad arbitration clause. We thus reverse the trial court's order and render judgment that all of Ward's claims are compelled to arbitration.

## I. BACKGROUND

In 2012, Gray, Ward, and Ken Burge started Primal Health LP (the Partnership), which sells herbal and vitamin supplements online. Burge later departed, and the Partnership purchased his interest leaving Gray and Ward as the only remaining limited partners and Happy Accidents as the general partner.

Gray is the Partnership's majority owner and Happy Accidents' CEO.

Neither Gray nor Ward have an employment agreement with Primal. But the parties signed the LP Agreement which provides in Section 13.2 that:

> All disputes and claims relating to this Agreement, the rights and obligations of the parties hereto, or any claims or causes of action relating to the performance of either party that have not been settled through mediation will be settled by arbitration by the American Arbitration Association in either Boca Raton, Florida or Arizona in accordance with the Federal Arbitration Act and the Commercial Arbitration Rules of the American Arbitration Association. The costs of the arbitration proceedings will be borne by the losing party if such party is found to have been in material breach of its obligations hereunder. . . .

At some point, Ward approached Gray and Accidents about his desire to leave the Partnership and asked Gray to buy out his interest. A dispute arose concerning the valuation of Ward's partnership interest.

Consequently, Ward filed this suit asserting breach of contract, breach of fiduciary duty, wrongful discharge, and defamation claims. Ward's ten-page, fifty-eight paragraph, and four count petition describes in detail that Ward and Gray initiated discussions for Gray to buy out Ward's partnership interest and how Gray (i) allegedly manipulated the partnership interest appraisal process to drive down the price of Ward's interest, (ii) forced Ward to involuntarily resign, (iii) used the forced resignation "as a tactic to preclude the Partnership's obligation to

–2–

repurchase Ward's interest under the Partnership Agreement . . . ," (iv) refused to complete the buy-out, and (v) refused to make partnership distributions to Ward.

Each count in Ward's petition begins by stating that, "Plaintiff [Ward] incorporates the preceding paragraphs as if fully reproduced herein." Ward's first two counts are his fiduciary breach and partnership claims. Thus, his succeeding wrongful termination and defamation counts incorporate as if fully reproduced therein all of the preceding (i) factual allegations regarding partnership agreement disputes, valuation manipulations, and forced resignations and (ii) the resulting fiduciary breach obligations.

Accidents moved to compel arbitration according to the LP Agreement's arbitration clause. The court initially ordered that all of Ward's claims would be arbitrated. But following Ward's motion for reconsideration, the trial court ordered that Ward's breach of fiduciary duty and breach of contract claims were subject to arbitration while the wrongful discharge and defamation claims were not. This appeal followed.

## II. ANALYSIS

### A. Standard of Review

We review a trial court's ruling on a motion to compel arbitration under an abuse of discretion standard. *See Henry v. Cash Biz, L.P.*, 551 S.W.3d 111, 115 (Tex. 2018). Under that standard, we defer to the trial court's factual determinations when they are supported by evidence, but review de novo the trial court's legal determinations. *VSR Fin. Servs., Inc. v. McLendon*, 409 S.W.3d 817, 827 (Tex. App.—Dallas 2013, no pet.). Whether disputed claims fall within the scope of a valid arbitration agreement is a question of law that we review de novo. *Henry*, 551 S.W.3d at 115.

Generally, a party seeking to compel arbitration under the FAA must establish that (i) there is a valid agreement to arbitrate and (ii) the claims raised fall within the agreement's scope. *See id.*

–3–

Although there is a strong presumption favoring arbitration, the presumption arises only after the party seeking to compel establishes the existence of a valid arbitration agreement. *JM Davidson, Inc. v. Webster*, 128 S.W.3d 223, 227 (Tex. 2003). Any doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration. *See In re Serv. Corp. Int"l.*, 85 S.W.3d 171, 174 (Tex. 2002) (citing *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp*., 460 U.S. 1, 24–25 (1983)).

Nonetheless, "[e]ven the exceptionally strong policy favoring arbitration cannot justify requiring litigants to forego a judicial remedy when they have not agreed to do so." *Carr v. Main Carr Dev., LLC*, 337 S.W.3d 489, 496 (Tex. App.—Dallas 2011, pet. denied).

Here, the parties agree that there is a valid agreement to arbitrate, and the issue is whether Ward's claims all fall within its scope. Because the arbitration agreement's validity is undisputed, we begin with a strong presumption favoring arbitration. *See JM Davidson*, 128 S.W.3d at 227.

**B.      Who Decides Arbitrability?**

The threshold question we must consider is whether the scope of the arbitration clause was to be determined by the court or the arbitrator. In this instance, we conclude that the trial court properly decided the arbitrability issue because Accidents urged the trial court to compel arbitration without arguing that the parties agreed to refer the arbitrability issue to arbitration.

Generally, the question of arbitrability is a gateway issue decided by a court rather than an arbitrator. *AT & T Techs., Inc. v. Commc'n Workers of Am*., 475 U.S. 643, 649 (1986). Gateway matters include whether the parties agreed to arbitrate and whether a claim or dispute is encompassed in that arbitration agreement. *In re Labatt Food Serv., L.P.*, 279 S.W.3d 640, 643 (Tex. 2009) (orig. proceeding). The parties, however, may agree to submit matters of substantive arbitrability to arbitration. *Howsam v. Dean Witter Reynolds, Inc*., 537 U.S. 79, 83 (2002). But, "[c]ourts should not assume that the parties agreed to arbitrate arbitrability unless there is 'clear

and unmistakable' evidence that they did so." *First Options of Chicago, Inc. v. Kaplan*, 514 U.S. 938, 944 (1995).

Accidents argues that the arbitration provision's reference to the AAA Rules constitutes clear and unmistakable evidence that the parties intended that an arbitrator decide issues of arbitrability because those rules grant an arbitrator the power to rule on his own jurisdiction, including the scope of an arbitration agreement.[2]  This issue, however, was not preserved for our review.  *See* TEX. R. APP. P. 38.1.

In the court below, Accidents argued only that all of the claims were within the scope of the arbitration clause and urged the court to compel arbitration on all claims.  Because the arbitrability of the scope issue was first raised on appeal, we do not consider whether the parties agreed to arbitrate arbitrability and instead limit our review to whether the excluded claims fall within the clause's scope.  *See* TEX. R. APP. P. 38.1

## C.    Are Ward's defamation and wrongful termination claims within the arbitration clause's scope?

Yes, they are because (i) this is a broad, "relates to" clause and (ii) those claims relate to the agreement which is the focal point of the parties' disputes.  A fair reading of Ward's factual allegations shows that the wrongful termination and defamation claims are at least related to his breach of fiduciary duty and contract claims.

To determine whether claims are within an arbitration agreement's scope, we examine the agreement's terms and the claim's factual allegations.  *Skidmore Energy, Inc. v. Maxus (U.S.) Expl. Co.*, 345 S.W.3d 672, 687 (Tex. App.—Dallas 2011, pet. denied).  "If the facts alleged 'touch matters,' have a 'significant relationship' to, are 'inextricably enmeshed' with, or are 'factually intertwined' with the contract containing the arbitration agreement, the claim is arbitrable." *Cotton*

---

[2] This court has held that an arbitration provision providing for arbitration "in accordance with the Federal Arbitration Act and the Commercial Arbitration Rules of the American Arbitration Association" evidenced a "clear and unmistakable intention that the arbitrators have the authority to determine the scope of [the arbitration]." *Kyani, Inc. v. HD Walz II Enter.*, No. 05-17-00486-CV, 2018 WL 354072, at \*3, 7 (Tex. App.—Dallas July 24, 2018, no pet.) (mem. op.); *but see PER Group, L.P. v. Dava Oncology, L.P.*, 294 S.W.3d 378, 386 (Tex. App.—Dallas 2009, no pet.) (concluding arbitrability issue not preserved because AAA rules were not admitted into evidence).

*Commercial USA, Inc. v. Clear Creek ISD*, 387 S.W.3d 99, 108 (Tex. App.—Houston [14th Dist.] 2012, no pet.); *see also Alliance Family of Cos. v. Nevarez*, No. 05-18-00622-CV, 2019 WL 1486911, at *2 (Tex. App.—Dallas Apr. 4, 2019, no pet.) (mem.op.).

Doubts regarding an agreement's scope are resolved in favor of arbitration. *See In re Kellog Brown Root, Inc.*, 166 S.W.3d 732, 737 (Tex. 2005). This is particularly true when the arbitration clause is broad. *BDO Seidman, LLP v. J.A. Green Dev. Corp.*, 327 S.W.3d 852, 857 (Tex. App.—Dallas 2010, no pet.). In such cases, when there is no express provision excluding a particular grievance from arbitration, "only the most forceful evidence of a purpose to exclude the claim from arbitration can prevail." *Id.*

Broad arbitration clauses embrace "all disputes between the parties having a significant relationship to the contract, regardless of the label attached to the dispute." *FD Frontier Drilling (Cyprus), Ltd. v. Didmon*, 438 S.W.3d 688, 695 (Tex. App.—Houston [1st Dist.] 2014, pet. denied); *see also Saxa Inc. v. DFD Architect. Inc.*, 312 S.W.3d 224, 229 (Tex. App.—Dallas 2010, pet. denied) (discussing broad arbitration clause covering all claims, disputes and other matters arising out of the contract). In fact, broad language has been construed to extend not only to claims that literally arise under the contract, but to all disputes arising out of the parties' relationship. *Didmon*, 438 S.W.3d at 695.

The phrase "relates to" in an arbitration agreement is a very broad term. *Schwarz v. Pully*, No. 05-14-00615-CV, 2015 WL 4607423, at *3 (Tex. App.—Dallas Aug. 3, 2015, no pet.) (mem. op.). A claim relates to a contract if it has a significant relationship with or touches matters covered by the contract. *Id*.

Here, the arbitration clause applies to "all disputes and claims relating to" (i) "this Agreement," (ii) "the rights and obligations of the parties hereto," and (iii) "any claims or causes of action relating to the performance of either party."

Ward insists that two independent relationships are at issue: (i) his employment relationship as the Partnership's Director of Advertising and (ii) his relationship with and interest in the Partnership. According to Ward, only the latter relationship pertains to the LP Agreement containing the arbitration provision, and thus the claims that do not relate to the Agreement itself (the employment relationship claims) are not subject to arbitration. We disagree.

The LP Agreement concerning the parties' relationship informs our analysis. The agreement provides that no general partner or interest holder will receive any salary for services rendered on the Partnership's behalf except as provided in the agreement. It further provides that if a limited partner serves as an employee or agent of the Partnership, the agent or employee will not be deemed to be participating in the control of the business for liability purposes. Thus, at a minimum, the LP Agreement relates to Ward's employment by the Partnership.

Significantly, Ward did not sue the Partnership for wrongful termination. Instead, he sued Accidents (its general partner) and Gray (the Partnership's CEO). Ward's petition alleges that Gray forced Ward's resignation to preclude the Partnership's obligation to purchase Ward's interest. According to Ward, Accidents wrongfully discharged him and he has lost income and not received any severance from his forced resignation. In addition, Ward alleges that Accidents made defamatory statements about his employment status when Partnership employees were told that Ward resigned.

These allegations demonstrate that Ward's claims pertain to: (i) his employment by the Partnership; (ii) his right to receive a salary from the Partnership; and (iii) Gray's authority, as CEO of the Partnership, to terminate Ward's employment.

Additionally, the LP Agreement provides that if a party resigns while he owns a limited partnership interest, the Partnership is obligated to purchase that party's interest within ninety days. But the parties disagree about this provision's applicability when the limited partner's employment status is terminated. The disagreement concerning the Partnership buy-out terms is the linchpin

of the parties' dispute. According to Ward, he was forcibly terminated following the parties' disagreement about the buy-out terms. Thus, there can be no question that Ward's employment status "relates to" the LP Agreement. *See, e.g.*, *Capitol Income Props. LXXX v. Blackmon*, 843 S.W.3d 22, 23 (Tex. 1992) (orig. proceeding) (tort claims arose out of and related to limited partnership agreement); *Schwarz*, 2015 WL 4607423, at *3 (claim relates to a contract if it has a significant relationship to or touches matters covered by the contract).

Similarly, the wrongful termination and defamation claims also relate to the breach of fiduciary duty and contract claims that Ward does not dispute are arbitrable. *See In re Kaplan Higher Educ. Corp.*, 235 S.W.3d 206 at 208–09 & n.2 (Tex. 2007) (orig. proceeding) (per curiam) (negligence based claims were based on same facts as fraudulent inducement claim and were alternative forms of the same arbitrable claim); *see also Hou-Scape, Inc. v. Lloyd*, 945 S.W.2d 202, 206 (Tex. App.—Houston [1st Dist.] 1997, no writ) (defamation claim is generally arbitrable if the alleged statements arose directly out of a dispute about or are integrally linked to the contractual relationship).

Indeed, according to his petition, Ward's wrongful termination and defamation claims expressly incorporate and rely on the same factual allegations as do his contract and fiduciary breach claims. In fact, Ward actually incorporated those claims into his wrongful termination and defamation claims. Under that petition, Ward's wrongful termination and defamation claims are intertwined with, let alone related to, his partnership agreement and fiduciary breach claims.

Nonetheless, Ward insists that his defamation and wrongful termination claims are "stand alone" claims that arise out of a separate oral employment agreement. *See In re Sigmor*, No. 05-16-00703-CV, 2017 WL 1046770, at *4 (Tex. App.—Dallas Mar. 20, 2017, orig. proceeding) (mem. op.) ("If the facts alleged in support of the claim stand alone, are completely independent of the contract containing the arbitration provision, and the claim could be maintained without reference to the contract, the claim is not subject to arbitration."). To this end, he notes that the

LP Agreement does not expressly reference his employment and Gray confirmed, on multiple occasions, that Ward's employment would be terminated regardless of the buy-out.

Although Ward's petition states that "Ward and Defendants entered into an enforceable employment contract," there are no details concerning this alleged agreement, nor any explanation as to why such a contract was made between Ward and the general partner and CEO, as opposed to between Ward and the Partnership. But even if there is a separate oral employment agreement that exists apart from the LP Agreement, our analysis does not change. The LP Agreement expressly relates to such employment. And an arbitrable claim can relate to two agreements at the same time. *See Schwarz*, 2015 WL 4607423, at \*4.

In *Schwarz*, the appellant argued that his performance fee claims were not arbitrable because the claims arose out of an oral employment contract rather than the limited partnership agreement containing the arbitration clause. *Id*. Concluding that the claims were arbitrable, we stated:

> [T]he crux of the matter is whether the claims fit within the partnership agreements' arbitration clauses . . . The arbitration agreements apply to any dispute, controversy, or claim arising out of *or relating to* the limited partnership agreements . . . . A claim can relate to more than one agreement.

*Id*. (Emphasis in original); *see also Tantrum Street, LLC v. Carson*, No. 05-16-01096-CV, 2017 WL 3275901, at \*5 (Tex. App.—Dallas Jul. 25, 2017, no pet.) (mem. op.) (claims involving redemption of promissory note were not completely independent of appellant's employment and were therefore within the scope of the employment agreement's arbitration clause); *Kirby Highlands Surgery Ctr. L.L.P. v. Kirby*, 183 S.W.3d 891, 902 (Tex. App.—Austin 2006, no pet.) (construing separate purchase and sale agreement that did not have an arbitration clause with a partnership agreement containing an arbitration clause).

As Ward's petition demonstrates, the factual allegations supporting his contract and fiduciary duty breach claims are intertwined with the LP Agreement and Ward's wrongful termination and defamation claims. Indeed, the only way the statement about Ward's resignation

–9–

could be defamatory is in the context of the limited partnership's operation. The LP Agreement controls the terms of the buy-out from which the entire dispute arises.

Under these circumstances, we cannot conclude that Ward's wrongful termination and defamation claims are completely independent of and can be maintained without reference to the LP Agreement. Applying the strong presumption favoring arbitration in this context, we conclude the trial court erred in its determination that the employment and defamation claims were not encompassed in the broad arbitration clause. We sustain Accidents' sole issue.

### III. CONCLUSION

Having sustained appellants' sole issue, we reverse the trial court's order denying arbitration on the wrongful termination and defamation claims and order that all disputes between the parties proceed to arbitration.

/Bill Whitehill/

BILL WHITEHILL
JUSTICE

Molberg, J., dissenting

180266F.P05



# Court of Appeals
# Fifth District of Texas at Dallas

## JUDGMENT

STEVE GRAY AND HAPPY
ACCIDENTS, INC., Appellants

No. 05-18-00266-CV        V.

BRYAN WARD, Appellee

On Appeal from the 366th Judicial District
Court, Collin County, Texas
Trial Court Cause No. 366-05277-2017.
Opinion delivered by Justice Whitehill.
Justices Molberg and Reichek participating.

In accordance with this Court's opinion of this date, the trial court's order is **REVERSED** and judgment is **RENDERED** that: all of Bryan Ward's claims against Steve Gray and Happy Accidents are compelled to arbitration.

It is **ORDERED** that appellants STEVE GRAY AND HAPPY ACCIDENTS, INC. recover their costs of this appeal from appellee BRYAN WARD.

Judgment entered this 9th day of August, 2019.