**AFFIRMED and Opinion Filed January 30, 2024**



In The

**Court of Appeals**
**Fifth District of Texas at Dallas**

**No. 05-22-01314-CV**

**REX PERFORMANCE PRODUCTS, LLC, Appellant**
**V.**
**SULZER CHEMTECH USA, INC., Appellee**

**On Appeal from the 134th Judicial District Court**
**Dallas County, Texas**
**Trial Court Cause No. DC-17-05538**

# MEMORANDUM OPINION

Before Justices Partida-Kipness, Reichek, and Breedlove
Opinion by Justice Reichek

Rex Performance Products, LLC appeals the trial court's judgment awarding Sulzer Chemtech USA, Inc. damages and attorney's fees for Rex's failure to pay for goods it accepted pursuant to a purchase contract. In two issues, Rex contends the trial court erred in granting Sulzer's motion for directed verdict, and abused its discretion in determining the amount of attorney's fees Sulzer was entitled to recover. We affirm the trial court's judgment.

# Background

Rex is a foam production company. Sulzer sells foam manufacturing equipment. In July 2015, Rex contracted with Sulzer to purchase a foam extrusion unit ("FEU") for $1,180,000 payable in four installments. Rex also purchased technical assistance for an additional $29,000.

The "Design Basis" portion of the purchase contract specified the FEU's maximum output was 600 kilograms per hour. The contract's "Performance Guarantee" included the following disclaimer:

> BUYER acknowledges that that SELLER does not give any PERFORMANCE GUARANTEE beyond the MECHANICAL GUARANTEE described in the paragraph 8.1. SELLER will design the requested EQUIPMENT to the best of its knowledge and know-how in order to meet the design basis described in paragraph 3, but SELLER shall not be liable for not matching any product or process performance.

Paragraph 8.1, entitled "Mechanical Warranty," stated

> SELLER warrants that the [FEU] will be of the kind and quality as described in the QUOTATION and will be free of defects in workmanship and material. Excluded from SELLER's warranty and liability for defects are all deficiencies which cannot be proved to have their origin in bad material, faulty design of the [FEU], e.g. deficiencies resulting from normal wear and tear, improper maintenance, failure to observe the operating instructions, or deficiencies resulting from other reasons beyond SELLER's control. SELLER explicitly excludes any warranty for erosion, corrosion, and cavitation, except in case BUYER proves within 3 years from the delivery date of the [FEU] that the damage is caused by negligence in the choice of material of construction by SELLER . . . .

–2–

The purchase contract also contained two different sections addressing limitations of liability. Under the first section, the limitations on liability included the following:

> SELLER's liability for any damages relating to the EQUIPMENT delivered, intellectual property indemnity, or arising from SELLER's performance under the CONTRACT . . . shall be limited to 25% of the purchase order price. Under no circumstances shall Seller be liable for re-call costs. . . . In no event shall SELLER be liable to BUYER for any indirect, punitive, special, incidental, or consequential damages in connection with the CONTRACT, including but not limited to, loss of profits or interruption of production, loss or opportunity or business.

The second section, entitled "Overall Limitation of Liability," stated,

> NOTHWITHSTANDING ANYTHING TO THE CONTRARY IN THIS CONTRACT, INCLUDING ALL DOCUMENTS MAKING PART THEREOF AND TO THE MAXIMUM EXTENT PERMITTED BY LAW, IN NO EVENT SHALL SELLER BE LIABLE TO THE BUYER FOR LOSS OF PROFIT OR REVENUE LOSS OF USE INTERRUPTION OF PRODUCTION, COST OF CAPITAL, COST OF PURCHASED OR REPLACEMENT POWER AND ANY AND ALL COSTS RELATING TO DELAY, OR FOR INDIRECT, PUNITIVE, SPECIAL, INCIDENTAL, OR CONSEQUENTIAL DAMAGES OR CLAIMS BY THE BUYER'S CUSTOMERS FOR SUCH DAMAGES, IN CONNECTION WITH THIS CONTRACT, WHETHER SUCH LIABILITY IS BASED ON CONTRACT, TORT (INCLUDING NEGLIGENCE), STATUTE, OR ANY OTHER BASIS OF LEGAL LIABILITY.
>
> THE REMEDIES OF BUYER SET FORTH HEREIN ARE EXCLUSIVE AND SELLER'S LIABILITY WITH RESPECT TO ANY CONTRACT, INDEMNITY, TORT (INCLUDING NEGLIGENCE), UNDER ANY WARRANTY, STRICT LIABILITY, OR OTHERWISE SHALL NOT EXCEED 100% OF THE CONTRACT PRICE UNLESS CLAIMS ARISE FROM GROSS NEGLIGENCE OR WILFUL MISCONDUCT OF THE SELLER.

Delivery of the FEU was estimated to be "approximately 24 weeks" after receipt of the first installment payment. Due to a delay in billing, the parties agreed the delivery time period would begin on July 13, 2015. A Sulzer employee testified the FEU was delivered twenty-two weeks later, on December 17.

The FEU was tested by Rex under Sulzer's supervision. The contract specified that if the results of the performance test did not meet the performance guarantee requirements, Sulzer would perform the necessary corrections. This process would be repeated "up to three (3) more times, until all the defects and deficiencies which are the causes of the insufficient performance are corrected and the results of the performance test meet the guarantee requirements." If the FEU still failed to reach the performance parameters after four performance tests, Rex could reject the FEU and receive liquidated damages. Rex signed an acceptance form for the FEU on May 26, 2016.

The Mechanical Warranty period for the FEU extended for twelve months from the date of the successful performance test, or eight months from the date of delivery. If during that time period Rex discovered the FEU was defective or not in conformity with the terms of the contract, it was to notify Sulzer and Sulzer was required to remedy the defects "without undue delay." All corrections would be done at Sulzer's cost, including transport expenses and services of specialists sent by Sulzer to carry out repairs.

At the time Rex accepted the FEU, it had paid approximately sixty percent of the amount owed under the contract. A week and a half after accepting the FEU, Rex sent an email to Sulzer stating "[t]he Line continues to run well and make nice foam. This is a very nice machine!" The email went on to discuss some issues with the FEU such as modem connectivity.

On July 22, 2016, Rex sent a letter to Sulzer concerning payment of the remaining amount due under the contract. The letter stated "the cash situation at [Rex] is very tight at the moment." Rex proposed a plan for payments to be made over the following six months. The letter commented that the "plant is currently running satisfactorily, and the equipment from Sulzer is running well." Rex also stated it intended to expand in the future and was "quite satisfied with the Sulzer machinery and associated extrusion technology and confident it will enable us to produce the products that we need to for our planned market expansion."

On August 30, Sulzer notified Rex that its payments were past due. Rex responded on September 19 stating,

> We sincerely appreciate your patience and understanding during this process. Recently, we've become aware of additional defects within the new extrusion machine. These came to light during the latter part of August and have continued through Sulzer Chemtech's on-site visit earlier this month. Once we have a firm idea of the magnitude these additional defects will have on our business, we will be in touch with you regarding a solution to the outstanding balance.

Rex made no further payments to Sulzer.

Sulzer brought this suit in May 2017 asserting a claim against Rex for breach of contract. Sulzer sought to recover the full balance of $596,386.84 plus attorney's fees and prejudgment interest. Rex filed an answer asserting numerous affirmative defenses, as well as counterclaims for breach of contract, breach of express warranty, breach of implied warranty of merchantability, breach of implied warranty of fitness for a particular purpose, and fraudulent and/or negligent misrepresentation. Rex alleged the FEU was "woefully underperforming" and could not safely produce the six hundred kilograms of foam per hour specified in the contract. Rex sought to recover actual, economic, and exemplary damages in addition to attorney's fees and costs of suit.

Sulzer moved for a partial summary judgment on Rex's claims for consequential damages arguing Rex had waived its right to recover such damages in the purchase contract. The trial court agreed and granted a partial judgment that Rex "take nothing on any claim of lost profits, including reduction-in-sales-price damages to the extent such claims are based upon consequential damages and not direct damages."

The case was tried before a jury in August 2022. After Sulzer rested its case, Rex moved for a directed verdict on the ground that the purchase contract was illusory because there was no mutual obligation. Rex argued the wording of the guarantees did not obligate Sulzer to provide Rex with a properly functioning FEU. The trial court denied the motion.

Sulzer made its own motion for a directed verdict after Rex rested its case. Following a hearing, the trial court directed a verdict in favor of Sulzer on all issues except the amount of damages Sulzer was entitled to recover. The court's charge contained only a single question asking,

> What sum of money, if any, if paid now in cash by Rex, would fairly and reasonably compensate Sulzer for their damages, if any, that resulted from Rex's failure to comply with the contract?

The jury was instructed that,

> contract means the one or more agreements whereby Sulzer was to provide SULZER PE FOAM EXTRUSION UNIT for a capacity of 600 kg/h for use in Rex's business operations.

The jury determined Sulzer was entitled to the full amount of damages it requested.

The trial court's final judgment awarded Sulzer $596,386.84 in accordance with the jury's verdict. The court additionally awarded Sulzer $372,803.49 in attorney's fees. The judgement stated the court weighed the relevant factors in light of the evidence offered and determined the fees charged and time spent by Sulzer's counsel were reasonable and necessary. The court further found that segregation of the fees was neither necessary nor warranted given the parties' procedural postures and the nature of Rex's defenses and counterclaims. Rex brought this appeal.

**Analysis**

In its first issue, Rex contends the trial court erred in denying its motion for directed verdict and granting a directed verdict in favor of Sulzer because the purchase contract was illusory and unconscionable. A contract is illusory if the

promisor retains the option of discontinuing performance without notice. *Rogers v. Alexander*, 244 S.W.3d 370, 382 (Tex. App.—Dallas 2007, pet. denied). A contract may also be illusory if a party is not entitled to recover damages under any circumstances. *See Innovate Tech. Sols., L.P. v. Youngsoft, Inc.*, 418 S.W.3d 148, 152 (Tex. App.—Dallas 2013, no pet.). Neither circumstance is presented here.

The purchase contract required Sulzer to deliver to Rex a FEU meeting the mechanical specifications set forth in the contract that was free of defects in workmanship and material.[1] If Sulzer failed to deliver a conforming product, Rex could decline to accept the FEU and recover damages. If defects were discovered after Rex accepted the FEU, Sulzer was required to repair the unit at its own cost. Nothing in the contract allowed Sulzer to unilaterally decline to perform these obligations.

Rex asserts the contract was illusory because it disclaimed any performance guarantee beyond the mechanical warranty. According to Rex, the disclaimer meant "Sulzer had no obligation other than to deliver anything it deemed a PE Foam Extrusion Unit" and could have delivered a "bag of rocks" without incurring any liability. Rex's interpretation of the performance guarantee ignores the language of the mechanical warranty which required Sulzer to deliver a FEU meeting the design specifications outlined in the contract. The disclaimer within the performance

---

[1] Rex does not appeal the trial court's directed verdict in favor of Sulzer on Rex's claims for breach of contract and breach of express and implied warranties.

guarantee does not render this requirement illusory. Parties are free to make disclaimers a part of the basis of the bargain to the extent allowed by law. *See Welwood v. Cypress Creek Ests., Inc*, 205 S.W.3d 722, 727 (Tex. App.—Dallas 2006, no pet.). Rex does not contend the performance disclaimer was inconspicuous. Nor does it argue the disclaimer was impermissible under state law.

In support of its contention that the contract was unconscionable, Rex again relies on the performance guarantee disclaimer along with the contract's limitations on liability. In general, the term "unconscionability" describes a contract that is unfair because of its overall one-sidedness or the gross one-sidedness of its terms. *Arthur's Garage, Inc. v. Racal-Chubb Sec. Sys., Inc.*, 997 S.W.2d 803, 815 (Tex. App.—Dallas 1999, no pet.). A determination of unconscionability usually requires a showing that the contract is both procedurally and substantively unconscionable when made. *BDO Seidman, LLP v. J.A. Green Dev. Corp.*, 327 S.W.3d 852, 858 (Tex. App.—Dallas 2010, no pet.). Whether a contract is procedurally unconscionable focuses on the facts surrounding the bargaining process. *Arthur's Garage*, 997 S.W.2 at 815. Substantive unconscionability is concerned with the fairness of the agreement itself. *Id.*

Texas courts do not ordinarily inquire into the relative fairness of a contract's terms. *Venture Cotton Co-op v. Freeman*, 435 S.W.3d 222, 228 (Tex. 2014). "A contract or contract provision is not invariably substantively unconscionable simply because it is foolish for one party and very advantageous to the other. Instead, a

term is substantively unreasonable where the inequity of the term is so extreme as to shock the conscience." *Besteman v. Pitcock*, 272 S.W.3d 777, 789 (Tex. App.—Texarkana 2008, no pet.) (quoting *Anaheim Indus. v. GMC,* No. 01-06-00440-CV, 2007 WL 4554213, at *9 (Tex. App.—Houston [1st Dist.] Dec. 20, 2007, pet. denied). Because of this state's strong policy favoring the freedom to contract, there is a high threshold to prove unconscionability. *Id.*

None of the factors that might weigh in favor of unconscionability are present in this case. Rex concedes in its brief that the purchase contract was the result of an arms-length transaction and it makes no assertions that the parties did not have equal bargaining power. Rex argues instead that it believed the contract promised the FEU would consistently produce at its maximum capacity of six hundred kilograms of foam per hour. This assumption is belied by the performance guarantee disclaimer. The fact that Rex subjectively believed the contract promised something it did not does not render the contract unconscionable. *See El Paso Field Servs., L.P. v. MasTec N. Am., Inc.*, 389 S.W.3d 802, 811–12 (Tex. 2012) (court's role is to enforce contract's allocation of risk and parties are obligated to protect themselves by reading what they sign).

Rex further contends the contract is unconscionable because it "eliminates every available avenue of damages" that Rex could recover from Sulzer for breach of contract. This argument is, again, belied by the contract's language which permits several forms of recovery if Sulzer fails to deliver a FEU meeting the contract's

design specifications. The only form of damages that is foreclosed by the contract is consequential damages. Contractual limitations on the recovery of consequential damages are not only not unconscionable, they are not unusual. *See, e.g., Cherokee Cnty. Cogeneration Partners, L.P. v. Dynegy Mktg. and Trade*, 305 S.W.3d 309, 314 (Tex. App.—Houston [14th Dist.] 2009, no pet.).

Based on the foregoing, we conclude the purchase contract was not illusory or unconscionable. We resolve Rex's first issue against it.

In its second issue, Rex contends the trial court abused its discretion in awarding Sulzer unreasonable and unrecoverable attorney's fees. Rex argues the fees awarded were unreasonable because the billing records submitted into evidence showed Sulzer's attorneys spent time on what Rex characterizes as "delay tactics" and unnecessary matters such as resisting discovery. We accord considerable deference to a trial court's findings regarding whether prevailing counsel's claimed hours are excessive, redundant, or unreasonable. *El Apple I, Ltd. V. Olivas*, 370 S.W.3d 757, 763–64 (Tex. 2012). "The trial court possesses a superior understanding of the case and the factual matters involved" and is in the best position to determine from the context of the case whether a party's filings are groundless or brought merely for the purpose of delay. *See id.* at 764. After reviewing the record, we conclude the trial court did not abuse its discretion in concluding all the work performed by Sulzer's counsel was reasonable and necessary.

Rex additionally contends the trial court improperly awarded Sulzer attorney's fees for work performed in connection with defending against Rex's counterclaims. But such fees are recoverable when, as in this case, the prevailing party in a breach of contract case was required to defeat the opposing party's counterclaims to recover fully on its own claim. *Bullet Trap, L.L.C. v. Waterproof Positive, LLC*, No. 05-18-00529-CV, 2019 WL 3543579, at *7–8 (Tex. App.—Dallas Aug. 5, 2019, pet. denied) (mem. op.). The facts and legal theories supporting both Sulzer's contract claim and Rex's counterclaims were heavily, if not completely, intertwined. The trial court did not err, therefore, in concluding Sulzer was entitled to recover all of its attorney's fees. We resolve Rex's second issue against it.

We affirm the trial court's judgment.

/Amanda L. Reichek/
AMANDA L. REICHEK
JUSTICE

221314F.P05

–12–



# Court of Appeals
# Fifth District of Texas at Dallas

## JUDGMENT

REX PERFORMANCE PRODUCTS
LLC, Appellant

No. 05-22-01314-CV       V.

SULZER CHEMTECH USA, INC.,
Appellee

On Appeal from the 134th Judicial
District Court, Dallas County, Texas
Trial Court Cause No. DC-17-05538.
Opinion delivered by Justice
Reichek. Justices Partida-Kipness
and Breedlove participating.

In accordance with this Court's opinion of this date, the judgment of the trial court is **AFFIRMED**.

It is **ORDERED** that appellee SULZER CHEMTECH USA, INC. recover its costs of this appeal from appellant REX PERFORMANCE PRODUCTS LLC.

Judgment entered January 30, 2024